**08 CIV 5415**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X

COSCO BULK CARRIER CO. LTD.,

Plaintiff,

- against -

XYZ

Defendant.

--------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, COSCO BULK CARRIER CO. LTD. (hereinafter "Cosco" or "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, XYZ, alleges, upon information and belief, as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach a maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331.

2.    At all times material to this action, Cosco was, and still is, a foreign corporation, or other business entity organized and existing under the laws of China.

3.    Upon information and belief, XYZ was, and still is, a foreign corporation, or other business entity organized and existing under the laws of Hong Kong.

4.    At all times material to this action, Cosco was the manager of the vessel "ABC" (hereinafter "The Vessel").

5.  By a fixture note incorporating the terms of the GENCON 94[1] charter party, dated February 15, 2006, (hereinafter "the fixture note"), Cosco voyage chartered the vessel "MV. TEN"[2] to Defendant for the carriage of two cargos of steel coils from the loading ports of Dalian Port and Bayuquan Port, China to the discharge ports of Houston, Mobile, and Tampa, USA and Veracruz and Tampico, Mexico. *A copy of the fixture note is attached hereto as Exhibit "1."*

6.  Cosco issued a Bill of Lading for carriage of the cargo. *A copy of the Bill of Lading is attached hereto as Exhibit "2".*

7.  Pursuant to the terms of the fixture note, Cosco delivered the Vessel into the service of Defendant and has at all times fully performed its duties and obligations under the charter party.

8.  Disputes later arose between the parties regarding alleged salt water damage to the steel cargo. An investigation by Cosco revealed that the cause of the damage was due to a hopper tank plating puncture to the Vessel's hold number one. The puncture was caused by the stevedores during cargo loading operations. The steel cargo damage was discovered on May 29, 2006, a few days before discharge operations commenced. The cargo discharge operations took place from June 2006 through June 3, 2006.

9.  Pursuant to the loading and discharging terms of the fixture note, the cargo was to be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by Defendant, free of any risk, liability and expense whatsoever to Cosco.

10.  The fixture note allocates liability for damage to the cargo occurring during loading and discharging operations to the charterer, Defendant.

---

[1] This is a uniform general charter party known as "The Baltic and International Maritime Council Uniform General Charter (as revised 1922, 1976 and 1994); Code Name: "GENCON".

[2] "To Be Nominated"

11.     Cosco received a cargo claim from Clyde & Co., counsel for the consignee of the steel cargo. Consignee demanded that Cosco post security in its favor in the amount of $300,000.00 for damage to the cargo or else face possible arrest or other detention of the Vessel or any other vessel or other property owned or managed by Cosco.

12.     In order to avoid arrest or detention of its vessels, Cosco posted the requested security in the amount of $300,000.00 via a Letter of Undertaking. This claim is now being arbitrated in Hong Kong. *A copy of the Letter of Undertaking is attached hereto as Exhibit "3".*

13.     Thereafter, Cosco demanded security from the real party liable for the damage, to wit, Defendant, in the amount of $300,000.00. *See Cosco's demand for security dated May 29, 2008 attached hereto as Exhibit "4".*

14.     To date, Defendant has refused to post security. *See Exhibit "4."*

15.     Defendant has breached the terms of the fixture note by refusing to post security for the steel cargo damage, despite that it is the party liable for this damage under the fixture note.

16.     There is a split of authority among district judges within the Southern District of New York as to whether an indemnity claim is ripe and therefore a proper claim under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims (hereinafter "Admiralty Rule B").

17.     Cosco has a valid maritime claim properly justifying an attachment under Admiralty Rule B. Cosco has been required to post security in the amount of $300,000.00 and thus had to repay a debt owed to it." *See Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.,* 485 F Supp. 2d 399, 404, 2007 U.S. Dist. LEXIS 29789 (2007) (holding plaintiff had alleged a valid admiralty claim under Admiralty Rule B where Plaintiff had been required to post security to secure the consignee of the goods for the damages to cargo, and thus, having been required to post security, had a direct interest in securing its claim of indemnity against defendant.)(*Cf. Ronko*

*Steamship Co., Ltd. v. China National Chartering Corp.*, 536 F. Supp. 2d 362, 365, 2008 U.S. Dist. LEXIS 16512, holding that an indemnity claim is not ripe until the underlying cargo claim has been paid.)

18.    Pursuant to the fixture note, disputes between the parties are to be submitted to arbitration in Hong Kong with English law to apply. Cosco will commence arbitration after the commencement of this action and jurisdiction is obtained over Defendant.

19.    This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Cosco's claims and in aid of Hong Kong arbitration proceedings.

20.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

21.    As best as can now be estimated, Plaintiff expects to recover the following amounts in arbitration as the prevailing party:

| | | |
|---|---|---:|
| a. | Plaintiff's Principal Claim: | $ 300,000.00 |
| | *Amount posted as security for damage to steel cargo* | |
| b. | Interest for 2 years, compounded quarterly at 7%: | $ 44,664.53 |
| c. | Estimated arbitration costs: | $ 27,000.00 |
| d. | Estimated recoverable legal fees and costs: | $ 105,000.00 |
| Total: | | $ 476,664.53 |

22.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held

in the hands of one or more garnishees which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment annexed hereto as Exhibit "5".*

23.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia,* any property of the Defendant held by any garnishee within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

C.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount $476,664.53 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.     That this Court enter Judgment against Defendant on the claims set forth herein;

E.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.    That this Court award Plaintiff its attorney's fees and costs of this action; and

G.    That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: June 12, 2008
New York, NY .

The Plaintiff,
COSCO BULK CARRIER CO. LTD.

By: _Anne C. LeVasseur_

Patrick F. Lennon
Anne C. LeVasseur
Charles E. Murphy
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
pfl@lenmur.com
acl@lenmur.com
cem@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut )
                     )    ss.:    Town of Southport.
County of Fairfield  )

1.   My name is Anne C. LeVasseur.

2.   I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.   I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.   I have read the foregoing Verified Complaint and know the contents hereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.   The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.   The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.   I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    New York, NY
          June 12, 2008

                              _Anne C. LeVasseur_
                              Anne C. LeVasseur

EXHIBIT 1

(1)

RECEIVED
AUG 2 9 2006

## FIXTURE NOTES

FEB. 15,2006

IT IS HEREBY FULLY MUTUALLY AGREED BETWEEN COSCO BULK CARRIER
CO., LTD (AS OWNERS) AND ... ... ... (AS CHTRS) UNDER FLWG
TERMS AND CONDITIONS:

- VSL: SHV, TBN ... BY OWRS BEFORE MAR 03 2006, WHICH TO BE COMPLIED WITH
REQUIREMENTS OF RECEIVERS, AND GRAB DISCHY & AGE 25 YEARS MAX

CGO DETAILS N QTTYS:

* CARGO: B.470-480 MOL CO STEEL PRODUCTS

- L/PORT : 1 SBP DALIAN PORT, CHINA

- D/PORT : 1 SBP HOUSTON    .............................................................
                            COILS)

       1 ... HRS ........ .......................................................
       1 SBP WEEKS, USA    .......................................................
       1 SBP .........., USA    .......................................................

- L/CARGO: 74,500MT SPLIT GALVO STEEL PRODUCTS

- L/PORT : 1 SBP ........... OF PORTS, CHINA

- D/PORT : ONE SAFE OWN'S BERTH VERACRUZ, MEXICO  9,750MTU DIRECT STL PLATE+
                            400P STL COILS)

       ONE SAFE OWN'S BERTH OF TAMPICO, MEXICO  5,900MT STEEL PLATE

- LAYCAN 25TH - 30TH MAR 2006

FREIGHT: CARGO FOR ALL DISPORT ON AVERAGE USD41.5 PMT FIOST 2/6, IF OWNER
CAPTIONED VESSEL'S AGE OVER 20 YEARS, CHTRS AT DIRECT DISCOUNT
USD AS FLAT PMT ............................... VOYAGE AS INDEMNIFYING OVER AGE
PREMIUM

DETENTION: CHRS 2 ... TO PAY USD20,000 PDPR TO OWRS IN ADVANCE IF CARGO AND/OR
DOCUMENTS ARE NOT READY UPON VSL ARRIVAL AT LOAD PORT/S DISCH PORT/S
RESPECTIVELY AND THE RECEIVER WILL NOT TAKE THE CARGO AS PER CUSTOM OF THE
PORTS.

L/CHRS DESPATCH IF ANY DUE IN/USAGE TO BE ARRANGED BY CHTRS, AND TO BE FOR CHTRS ACCT.

PAYMENT TERMS:  100PCT FREIGHT TO BE PAID WITHIN 14 BANKING DAYS AFTER
COMPLETION OF LOADING AND SIGNING AND RELEASING THE B/L MARKED "FRT PAYABLE
AS PER C/P" IN CASE "FREIGHT PREPAID" B/L IS REQUIRED, THEN OWRS CAN ONLY
INSTRUCT LOAD PORT AGENT TO RELEASE B/L UPON RECEIPT OF OCEAN FREIGHT FROM
CHTRS. FULL FREIGHT DEEM EARNED UPON COMPLETION OF LOADING, DISCOUNTLESS
AND NON-RETURNABLE WHETHER VESSEL AND/OR CARGO LOST OR NOT.

AUG-29-2002 09:09  FROM:                                        7031215552453        P.2

CHARTERERS CONFIRM IN WRITING THAT THEY DO NOT AND WILL NOT USE ANY OR STRAW IN ANY SUCH MASTER DRESSING MATERIAL WITH THEIR STEEL PRODUCTS. IN ANY STRAW OR HAY ON ANY SHIP THE AFFECTED PRODUCT WILL BE CLEANED AT THE CHARTERERS EXPENSE AND SHIPS TIME LOST WILL BE CHANGED TO THE CHARTERER. IF ANY STRAW OR HAY SUPS CAST THE SHIPS COMMAND, IS LOADED WITH THE STEEL AND DISCOVERED BEFORE DEPARTURE, THEN THE HOLD WILL BE UNLOADED, CLEANED AND THEN RELOADED, ALL COSTS RELATED WITH THE HAY AND STRAW DISPOSAL TO BE FOR THE CHARTERERS ACCOUNT.

TALLY SHORESIDE TALLY IF ANY TO BE FOR CHRS ACCT; SHIPSIDE TALLY TO BE FOR OWRS ACCT.

ANY TAXES/DUES THAT FACES ON CGO TO BE FOR CHRS ACCT
ANY TAXES/DUES THAT BASED ON VSL AND FRT TO BE FOR OWNRS ACCT.

PART CGO/PART CARGO TO BE ALLOWED.

AGENTS:  OWNERS AGENTS BOTH ENDS.

LIGHTERAGE IF OCCURRING IF ANY TO BE FOR CHRTERS ACCT

ARBITRATION IN HONG KONG, AND ENGLISH LAW TO APPLY.

OWNERS/MASTER TO ADV CHRS RE ACCURATE 3 DAYS ETA TO L/PORT AND ETA TO D/PORT DESPATCH.

OTHERS AS PER GENCON 94 CHARTER PARTY
AS INDENT.


SIGNATURE
FOR AND ON BEHALF OF CHRTS:

For and on behalf of

SIGNATURE
FOR AND ON BEHALF OF OWNERS:


For and on behalf of

EXHIBIT 2

Jun 12 2008 1:14PM

03/30/2006  17:04     9225-412-5319788           ATTC                    PAGE 04

MAR-30-2006 17:01 FROM:

P.5

CODE NAME "CONGENBILL" EDITION 1994

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

CARRIER: COSCO BULK CARRIER CO., LTD.

TO THE ORDER OF SOCIETE GENERALE
1221 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10020

STEMCOR USA INC. 350 FIFTH AVENUE
SUITE 7810 NEW YORK, NY 10118-ATTENTION
RICARDO ROJAS (212) MEX190

Vessel: BANYUWANGI CHINA

Port of Discharge: VERACRUZ, MEXICO

PRIME HOT ROLLED STEEL PLATES

ACTUAL LOT NUMBER LOT 3

7% PIECES                              WSLSC LOT

DISCHARGE PORT:VERACRUZ, MEXICO
THE DATE LOADED ON BOARD: MAR302006

FREIGHT PREPAID

SAY: SEVEN HUNDRED SEVENTY SIX PIECES ONLY.

SHIPPED at the Port of Loading in apparent good order and condition...

Place and date of issue
LIUYUAN, CHINA

AS AGENT FOR THE MASTER
Li QINGLIN

EXHIBIT 3



(2)

Club Letter of Undertaking

To:
Ship:                                         Messrs Clyde & Co, 51 Eastcheex. London EC3M 1JP
Voyage:
Cargo:                                        Steel Coils
Bill of lading:
                                                                    ...... -- ......-,UT, STOBE 24006
Charter party:
Description of claim:                         Alleged sea water damage to steel coils

Amount of undertaking:
     In figures: USD300,000
     In words: United States Dollars Three Hundred Thousand Only

Date of incident:                             16 June 2006
Date of letter of undertaking:                7 September 2006

In consideration of and upon condition that you refrain from arresting or otherwise detaining the above vessel or
any other vessel or property in the same legal beneficial or associated ownership or management in connection
with the above alleged claim and/or prosecuting legal or arbitration proceedings in respect of such claim,
otherwise than before a court or tribunal of competent jurisdiction, against the owners of the above vessel, their
servants or agents in connection with the said claim.

WE HEREBY UNDERTAKE to pay within 28 days of receipt of written demand any sum which may either be
agreed in writing between the owners of the above vessel and yourself to be due to you in respect of the
claim or for which the owners may be held liable by means of a final arbitration award or a final enforceable
judgment of a Court or Tribunal of competent jurisdiction not exceeding the amount of the guarantee as
mentioned above plus interest and costs.

We confirm that the Shipowners agree that the above-mentioned claims shall be subject to English law and to
the exclusive jurisdiction of Hong Kong arbitration.

We further confirm that we will within fourteen days of the receipt from you of a request so to do, instruct and
authorise Hong Kong Solicitors forthwith to accept on behalf of the above ship and/or the shipowners service of
any notice and/or document and/or pleading relating to Hong Kong arbitration.

This undertaking is given without prejudice to all rights and defences which may be available to owners and or
any rights of limitation of liability according to international conventions or local laws.

This undertaking shall be subject to English law and jurisdiction of the High Court of Justice in London and will
expire if legal proceedings have not been commenced before a court or tribunal of competent jurisdiction within
one year from the date of this letter of undertaking.

Yours faithfully,
Nicola Mason

Vice President
for and on behalf of
Assuranceforeningen SKULD (Gjensidig)

**EXHIBIT 4**

Jus. '^   ^^^^   · ^^^                                           ·    ·   )   :7

(3)

Jenny Chu

From:     Jenny Chu
Sent:     Thu29. May 2008 15:26
To:
Cc:
Subject:

Fax: 2802 9635

F/N dated 15th February 2008
Damage to Prime Galvanized Steel Coils - June 2005

Dear Sirs,

We refer to your email below, contents of which are totally rejected.

The expert evidence we have collected shows that the damage was a hidden damage
which could not be found at the loading, and we had already notified you once we found
that the damage to the vessel was caused by the stevedores. This does not exclude your
liability from clause 5 (c) of Gencon 94. As a result, your rejection of the liability under
this clause was utterly unacceptable.

In the meantime, whilst we reserve our right to claim against you regarding the damage to
the vessel itself, the damage we are seeking to recover from you  now is the cargo
damage, which is totally different from the clause 5 ( c) as you quoted.  If you think that
you can get out of your liability by clause 5( c) which we hereby expressly deny, then
please bear in mind that this clause is about the damage to the vessel, but does not
exclude your liability from the damage to "the cargo".

We have expert evidence to support our claim against you and we have to inform you that
your so-called legal point of view under clause 5( c ) is too weak to protect your position
and will definitely not be accepted under English law.

We reiterate our demand for security (in the amount of US$300,000 plus interest and
costs) from you set out in our email of 27th May 2008 remains the same.

If we do not have the security (subject to the wording of the security to be approved by us)
by close of business 2nd June 2008 Hong Kong time, we will proceed to take action

Jun 1?

P. 18

IMMEDIATELY without any leeway, and all the costs/expenses will also be for your account.

As the matter is already in the arbitration and we have already had our lawyers involved, we can take action immediately, so we will do what we mean and this message only serves as our FINAL WANRNING to you.

We trust our position is clear to you.

Yours faithfully,
SKULD (Far East) Ltd
Jenny Chu
www.skuld.com

From:
Sent: 29. Thu. May 2008 14:12
To: Jenny Chu
Cc:
Subject:

To: SKULD (Far East) Ltd
Atten: Ms Jenny Chu

Dear sirs

Your Mail dated 27th May, 2008 noted with thanks.
However, we have to inform you with regret that charterers cannot agree/accept any requests of security mentioned in your message.
Charterers have to reiterate again and again that under Clause 5(a) of GENCON 94, damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. Charterers/Shippers had no idea about the stevedores damage at loading port and the surveyor's report done at port of discharge. There are still no any good proofs were furnished to prove any stevecore damage occured during loading and afterwards.
We are looking forward to Owners/Carriers' withdraw their unreasonable request.

This message is to be regarded issued in due legal form, without admission/acceptance to/of any liability of
and/or Charterers/Shippers and is without prejudice whatsoever.

----- Original Message -----
From: Jenny Chu
To:
Cc:
Sent: Tuesday, May 27, 2008 4:24 PM
Subject:

AE

EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

COSCO BULK CARRIER CO, LTD.,                    :

                         Plaintiff,             :        08 Civ.
                                                :
            - against -                         :        ECF CASE
                                                :
XYZ                                             :
                                                :
                         Defendant              :
-----------------------------------------------------------X

### AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                      )    ss;  Town of Southport
County of Fairfield   )

        Anne C. LeVasseur, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein. I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

        2.      I have attempted to locate the Defendant, XYZ, within this District. As part of

my investigation to locate the Defendant within this District, I checked the telephone company

information directory, as well as the white and yellow pages for New York listed on the Internet

or World Wide Web, and did not find any listing for the Defendant. Finally, I checked the New

York State Department of Corporations' online database which showed no listings or registration

for the Defendants.

Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration for the Defendants.

3.      I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.      Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

5.      This is Plaintiff's first request for this relief made to any Court.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

6.      Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Peterson, Coleen A. McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

7.      Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

2

8.    To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served and throughout the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

3

## PRAYER FOR RELIEF TO TEMPORARILY FILE PLEADINGS UNDER SEAL AND FILE REDACTED PLEADINGS WITH ECF

11.   Upon information and belief, it is the practice of many law firms in the maritime bar to review the daily electronic docket sheet of the Southern District of New York for all maritime actions filed in the district and inform the defendant(s) named therein of any Ex Parte Orders of Attachment pending against them, thus defeating the purpose of the "Ex Parte" application.

12.   Upon information of belief, it is the practice of certain publications, specifically Tradewinds, to publish the names of defendants named in Ex Parte Orders of Attachment, thus further defeating the purpose of the "Ex Parte" application.

13.   Upon information and belief, Tradewinds has very recently publicized the names of parties in Rule B proceedings, the amount of the attachments, and other details of the actions, thereby further defeating the purpose of the "Ex Parte" application.

14.   The Courts within the Southern District of New York have an interest in preserving the efficacy of the Ex Parte Orders issued therein.

15.   The above interest supersedes the interest in maintaining a completely public docket, especially given that the public's access will only be limited temporarily until assets are attached and notice of attachment has been provided to the Defendant.

16.   Indeed, the public's access to Ex-Parte Orders of Maritime Attachment defeats their entire purpose, by depriving Plaintiffs of the element of surprise and potential allowing Defendants to re-route their funds to avoid the attachment, thus making the attachment remedy hollow.

4

17.    For the foregoing reasons, Plaintiff requests that this Court issue an Order that the pleadings, including the Verified Complaint and Orders filed herein, be temporarily filed under seal, and that the Plaintiff be directed to file a second set of pleadings on ECF, redacting the name of the Defendant and the name of the Vessel involved in this matter, and that the Court's order of maritime attachment and Order Appointing Special Process Server be kept under seal until this Court directs otherwise.

18.    This request is narrowly tailored to meet Plaintiff's needs. Once property is attached, the case should be unsealed, and unredacted pleadings may be posted electronically, as the interest underlying sealing the case and filing redacted pleadings will have been largely eliminated.

Dated: June 12, 2008
       Southport, CT

Anne C. LeVasseur

Sworn and subscribed to before me
this 12 day of June, 2008.

Notary Public / Commissioner of
Superior Court

5